Jason David EDWARDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–00–306 CR.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 18, 2001.

Decided Oct. 31, 2001.

James Makin, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Assistant Crim. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

A jury found Jason David Edwards to be guilty of aggravated assault with a deadly weapon on a peace officer, and assessed as punishment a five (5) year term of imprisonment in the Texas Department of Criminal Justice, Institutional Division. The sole issue raised on appeal addresses the legal sufficiency of the evidence regarding the proof of the "assault by threat" element of the offense. *See* Acts 1983, 68th Leg., R.S., ch. 977, § 1, 1968 Tex. Gen. Laws 5311, 5312.[1]

The indictment alleged Edwards "did ... intentionally and knowingly threaten imminent bodily injury to ... the Complainant, by pointing a deadly weapon, to-wit: a firearm at the Complainant...." The victim, Robert Ener, was a uniformed police officer conducting a traffic stop. Edwards was a self-described seventeen-year-old runaway wanna-be Latin King from Heartland, Wisconsin. Edwards listened to "gangsta rap" tapes as he traveled from Orlando, Florida, to Beaumont, Texas, in a stolen Escort. A pact between Edwards and a fellow runaway, Chad Potrykus, pledged on their tattoos that, if they were pulled over by the police, they would get in a shoot-out and would not be taken back alive. Ener decided to follow the Escort because Edwards looked away as he passed the squad car. As Ener's police car approached, Edwards moved a cocked and loaded handgun from under the seat to a position between the seat and the emergency brake. Once the vehicles were stopped, Officer Ener paused at the Escort's rear tire and instructed Edwards to exit the vehicle. Edwards replied, "Don't shoot." As he turned his body towards Ener, Edwards pulled the gun out of its hiding place and moved it in Ener's direction. Unbeknownst to Edwards,

---

1. For the current version of Section 22.01, see Tex. Pen.Code Ann. § 22.01(a)(2) (Vernon Supp.2001). For the current version of the aggravating elements and punishment ele-ment of the offense, the proof of which are not at issue in this appeal, see Tex. Pen.Code Ann. § 22.02(a)(2),(b)(2) (Vernon 1994).

Ener's partner, Ricky Anderson, had approached the vehicle on the passenger side. Officer Anderson saw the firearm, realized that his partner was about to be shot, called out "He's got a gun," stepped back, drew his weapon and shot Edwards twice. Anderson testified that at the moment before he decided to fire, Edwards was making a motion towards the driver's window. In response to Officer Anderson's warning, Officer Ener jumped back and drew his weapon.

Edwards argues that the evidence is legally insufficient to prove that he acted with intent to cause a reasonable apprehension of imminent bodily injury, because Officer Ener never saw the gun and Edwards never communicated his possession of the firearm to Ener. Edwards also argues that the evidence is legally insufficient to prove that he pointed the firearm at Ener as alleged in the indictment. We will initially take up the "intent to cause reasonable apprehension" issue.

■ Simply stated, Edwards argues that in order to "threaten" someone, that threat must be communicated to the victim in some manner. The State argues that the victim need not form any mental impression regarding the threat because assault by threat is a nature-of-conduct offense. *See Guzman v. State*, 988 S.W.2d 884, 887 (Tex.App.—Corpus Christi 1999, no pet.). "The gist of the offense of assault, as set out in Sec. 22.01(a)(2), is that one acts with intent to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to inflict such harm)." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.Crim.App.1981). Thus, in order for Edwards to have committed the offense of aggravated assault by threat, the State must prove beyond a reasonable doubt that Edwards intended to place Ener in apprehension of imminent bodily injury by pointing a firearm at

Ener. The act of pointing a firearm at someone will, by its nature, cause reasonable apprehension of imminent bodily injury only if the danger is perceived by the victim. Therefore, the State had to prove that Edwards intended Officer Ener to be aware that Edwards was armed.

■ The conduct prohibited by Section 22.01(a)(2) is making a threat, not pointing a weapon. The particular means of making the threat alleged in this indictment is "by pointing a deadly weapon," but that does not relieve the State of its burden to prove that Edwards threatened Officer Ener with the handgun. There is precedent addressing the sufficiency of the evidence of the threat element of assault offenses charged under Section 22.01(a)(2). We find *McGowan v. State*, 664 S.W.2d 355 (Tex.Crim.App.1984), to be particularly enlightening. *McGowan* addressed two convictions, one upon an indictment for aggravated assault by threat committed on a daughter and another for a simultaneous aggravated assault by threat upon a mother. *Id.* at 357. The Court of Criminal Appeals affirmed one conviction but ordered an acquittal on the other. *Id.* at 359. After McGowan kicked and stabbed the daughter, she saw McGowan holding the knife and begged him not to cut her, but McGowan threatened her with imminent bodily injury. As the mother tried to rescue the daughter, McGowan stabbed the mother from behind, breaking off the tip of the knife in the mother's cranium. *Id.* at 357. Then he fled. Although her daughter saw the attack, the mother never saw the knife and did not realize that she had been attacked until she felt the blow. The Court of Criminal Appeals held that the evidence was insufficient to show assault by threat even though the State proved bodily injury. *Id.* The act of stabbing the mother with the knife clearly placed the victim in danger, but it did not

constitute a threat because the victim was unaware of her peril. Here, the evidence supports an inference that Edwards intended to kill Officer Ener but was thwarted by Officer Anderson. As we learned from *McGowan*, however, Section 22.01(a)(2) requires proof not of an intent to commit an assault by bodily injury, but of an intent to cause in the victim a reasonable apprehension of imminent bodily injury. That is why the use of a weapon constitutes a threat under Section 22.01(a)(2) if the presence of the weapon is perceived by the victim before physical contact occurs.

In *Tullos v. State*, 698 S.W.2d 488 (Tex. App.—Corpus Christi 1985, pet. ref'd), the appellant stabbed the victim without warning, then walked away. *Id.* at 490. Notwithstanding his guilty plea, and his punishment phase admission to stabbing the victim, the appellate court found the evidence to be insufficient because evidence of an actual bodily injury is not evidence of a threat. *Id.*

*Richardson v. State*, 834 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd), resulted in an acquittal because the appellant shot the victim from behind, without first displaying the gun. On rehearing, the court rejected the State's argument that the jury could have inferred a threat from the fact that the appellant shot the victim a second time. The court acknowledged that a threat may be communicated by conduct, but only if the victim perceives the threatening conduct. *Id.* Since the first shot was delivered to the head at point blank range, the court held the evidence to be insufficient to support an inference that the victim was alive to perceive his imminent danger.

In *Donoho v. State*, 39 S.W.3d 324 (Tex. App.—Fort Worth 2001, no pet.), the court found the evidence of threat to be factually sufficient in a case where officers attempting to arrest the appellant realized that their suspect was armed with a gun. The court noted that the appellant was attempting to conceal the weapon from the officers, but found the evidence of threat to be factually sufficient because, once exposed, the appellant thrust the gun in the officer's face and fired a shot, then shouted an expletive and fired a second shot.

The mere presence of a gun was sufficient evidence of threat in *DeLeon v. State*, 865 S.W.2d 139, 142 (Tex.App.—Corpus Christi 1993, no pet.), and *Gaston v. State*, 672 S.W.2d 819, 821–22 (Tex.App.—Dallas 1983, no pet.), but in both cases the victim saw the weapon in close proximity. Officer Ener admitted that he couldn't see the handgun. After Officer Anderson warned Ener that Edwards was armed, Edwards continued to turn his body towards Ener, who made a defensive movement backwards before Anderson fired his weapon.

■ We cannot ignore the affinity this case bears to *McGowan* and its progeny. Clearly, the proof of intent to threaten with bodily injury cannot be satisfied by evidence of intent to commit bodily injury. Something else is required: proof that the accused acted with the intent to intimidate his victim. Pointing a gun at someone is threatening only if the act is apt to be perceived. Here, Edwards was acting surreptitiously. Once Officer Anderson raised the alarm, however, Edwards was no longer hiding a gun. It was in plain view and Officer Ener was actually aware of the danger. No physical contact had occurred. Therefore, both proof of intent to intimidate and the victim's perception of a threat were present. We turn now to Edwards' complaint of the lack of legally sufficient evidence that he "point[ed] a deadly weapon, ... at [Ener]."

■ Consistent with the Fourteenth Amendment's guarantee of due process, no

criminal defendant may be convicted and punished except upon proof sufficient to persuade a rational fact-finder of the defendant's guilt beyond a reasonable doubt. *Tibbs v. Florida,* 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663 (1982); *Ladd v. State,* 3 S.W.3d 547, 556–57 (Tex. Crim.App.1999). In assessing the legal sufficiency of the evidence, under the Fourteenth Amendment, to support a conviction, we consider all of the record evidence, in the light most favorable to the State and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2781, 61 L.Ed.2d 560, 573 (1979); *Miles v. State,* 918 S.W.2d 511, 512–13 (Tex.Crim.App.1996).

■ In the instant case, State's Exhibits 14, 15, and 16 were admitted. Each of these exhibits appears to depict an artist's rendition of the sequence of events visually witnessed by Officer Anderson as Edwards drew the weapon up from between the seat and the emergency brake and then turned toward the direction of Officer Ener. State's Exhibit 16 depicts the position of Edwards at the point he was shot, and is described by Officer Anderson as follows:

Q. (State) Okay. And finally, Ricky, I want you to look at State's 16. Tell the jury what that depicts.

A. (Anderson) Mr. Edwards turning towards the driver's side window. I'm anticipating him shooting at my partner. That's the last thing I remember seeing whenever I fired my weapon.

Q. So, that's a fairly significant picture right there.

A. Yes, sir, it is.

Later, on re-direct examination, Officer Anderson again described what he observed Edwards do as Officer Ener stood at the opposite side of the vehicle:

Q. (State) You said it in an interesting way before, what you thought Jason Edwards was going to do when he was in this position. You said, "When I fired, I thought at that time he was about ready to fire."

A. (Anderson) Yes, sir.

Q. In your opinion, Officer, keeping in mind this picture, where Robert is, and this picture, what was Jason Edwards doing with that gun?

A. He was going to shoot Robert.

Q. Where was he pointing it?

A. Robert's direction.

Based upon the testimony of Officer Anderson coupled with the scenes depicted in State's Exhibits 14, 15, and 16, we believe that any rational jury could have found the element of the offense alleging that Edwards pointed the weapon at Robert Ener to have been proven beyond a reasonable doubt, taking into account all reasonable inferences derived from said testimony and exhibits. Issue one is therefore overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

Justice DAVID B. GAULTNEY, concurring.

Justice DON BURGESS, dissenting.

DAVID B. GAULTNEY, Justice, concurring.

I concur. The evidence established that Edwards' determination to kill Officer Ener endangered Officer Ener even though he did not see the weapon. Officer Anderson saw the weapon as a source of danger, a threat, to Officer Ener and responded to remove the threat. That Edwards acted surreptitiously to hide the

threat simply made his behavior more dangerous, more threatening, not less so. I agree with the affirmance of the conviction.

DON BURGESS, Justice, dissenting.

Regretfully, I must dissent. Until the Court of Criminal Appeals overrules *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim.App.1984), we are bound by it regardless of the participants.[2] I believe it is clear that Officer Ener never saw the weapon and was never threatened or placed in imminent fear by Edwards. The record reflects:

Direct Examination of Ener.

Q Did you ever see the gun that was in his hand?

A No, sir. If I would have been in a position to see the gun then I would have been in a position where it would have been easy to shoot me.

Cross Examination of Ener

Q Officer, before the shots were fired, did you ever see the gun?

A No, sir, I wasn't in a position to see the gun.

. . . .

Q Now, right before the shots were fired, did you hear Mr. Edwards say anything ?

A No, sir, I never heard him say anything until after the shots were fired.

. . . .

Q Did you ever get closer to the driver's side than is shown on the video?

A (No response)

Q In other words, however close you got to that car is shown on the video?

A Yes, sir.

Q And if it's at the rear of the car or a little forward to that, it's shown on the video.

A Yes, sir.

Q And you never saw the gun.

A No, sir, I was never standing in a position to see it.

The video tape—comments by Ener

To Officer Anderson: I'm glad you saw that. I couldn't see s* *t, Rick. That's why I stayed back; something, something wasn't right.

Clearly Edwards was a wrongdoer and at least guilty of unlawfully carrying a weapon, TEX. PEN.CODE ANN. § 46.02 (Vernon Supp.2001), but under the evidence and case law, he did not threaten Officer Ener because Officer Ener never perceived the threat. I would urge our Court of Criminal Appeals to review this case, overrule *McGowan* and affirm the majority. But until it does so, I must follow *McGowan*.

**2.** The court also refused to review *Tullos v. State*, 698 S.W.2d 488 (Tex.App.—Corpus Christi 1985, pet. ref'd), and *Richardson v. State*, 834 S.W.2d 535 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).