NO. 07-02-0388-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 17, 2003



______________________________




CLARENCE L. HOOKER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-439900; HONORABLE CECIL PURYEAR, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION (1)


 Pursuant to a plea of not guilty, appellant Clarence L. Hooker was convicted of
aggravated assault with a deadly weapon, enhanced, and punishment was assessed at 35
years confinement. By a sole issue, he contends the evidence is insufficient to prove he used
a deadly weapon to threaten the victim. Based upon the rationale expressed herein, we
reverse and render in part; and remand the cause to the trial court for further proceedings.

 Complainant testified that she and appellant dated for approximately eight years and
were still together at the time of trial. According to her testimony, on July 12, 2001, appellant
willingly gave her $10 to purchase household cleaning supplies and on the following day gave
her an additional $20 to purchase medicine. Later that day upon entering her home, she
found appellant there, which she testified was not unusual. Without speaking to him, she
immediately went into her bedroom to put on her nightgown. After changing, she turned
around and discovered that appellant was standing in the bedroom in front of a closed door
demanding the return of his $30. She returned $10 and explained to him that she needed the
money. However, appellant persisted and told her to "give him the damn money." According
to complainant, he pulled a knife out from his shirt and she complied. However, she also
testified that appellant was standing on the other side of the bedroom and did not point the
knife in a threatening manner nor verbally threaten her. After appellant left, she called 911
to report the incident; however, no formal statement was given to the police until February 8,
2002. 

 The indictment against appellant recites that he 

 did then and there intentionally and knowingly threaten [complainant] with
imminent bodily injury and did then and there use a deadly weapon, to-wit: a
knife, that in the manner of its use and intended use was capable of causing
death and serious bodily injury . . . .

Appellant was not charged with "exhibiting" a deadly weapon. By his sole issue, he
challenges the legal and factual sufficiency of the evidence to prove that he "used" a knife as
a deadly weapon to threaten complainant. We agree. The standards of review for legal and
factual sufficiency of the evidence are well established and need not be detailed. (2) 

 Before determining whether the evidence is legally sufficient to sustain the conviction,
we must review the essential elements the State was required to prove. A person commits
aggravated assault if during the commission of an assault as defined in section 22.01 of the
Penal Code that person uses or exhibits a deadly weapon. Tex. Pen. Code Ann. §
22.02(a)(2) (Vernon 2003). Deadly weapon is defined in section 1.07 of the Penal Code as
follows:

 (A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or

 (B) anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.


Tex. Pen. Code Ann. § 1.07(17) (A) and (B) (Vernon 2003). Recently, the Court of Criminal
Appeals, in interpreting a statute in accordance with the plain meaning of its language,
concluded that utility knives, butcher knives, eating utensils, and straight razors, having an
obvious purpose apart from inflicting death or serious bodily injury, do not qualify as deadly
weapons under subsection (17)(A). McCain v. State, 22 S.W.3d 497, 502-03 (Tex.Cr.App.
2000) (en banc). Instead, the Court emphasized that the placement of the word "capable"
in subsection (17)(B) applies to any object, including a knife, that in the manner of its use or
intended use threatens deadly force even if the actor does not intend to actually use deadly
force. Id. In McCain, the Court in its analysis first inquired whether the butcher knife could
be a deadly weapon and then noted that if that question was affirmatively answered, a
determination could then be made on whether the knife was "used" or "exhibited" during the
offense. Id. Thus, our initial inquiry in the underlying case is whether the knife appellant
pulled out from under his shirt qualifies as a deadly weapon as defined in section 1.07(17)(B),
i.e., capable of causing death or serious bodily injury in the manner of its use or intended use.

 Whether a particular knife is a deadly weapon depends upon the evidence presented. 
Thomas v. State, 821 S.W.2d 616, 620 (Tex.Cr.App. 1991). This Court has previously
recognized that expert testimony is not required to determine the nature of a weapon nor is
it necessary that the weapon be introduced into evidence for the State to meet its burden of
proof. See Aleman v. State, 795 S.W. 2d 332, 335 (Tex.App.-Amarillo 1990, no pet.), citing
Morales v. State, 633 S.W.2d 866, 868 (Tex.Cr.App. [Panel Op.] 1982). Also, it is
unnecessary to show that any wounds were inflicted. Davidson v. State, 602 S.W.2d 272,
273 (Tex.Cr.App. [Panel Op.] 1980). However, where no actual injury is sustained, the State
must present evidence of other factors to establish that a knife is a deadly weapon. See
Victor v. State, 874 S.W.2d 748, 751 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Factors
to consider in that determination include the dimensions and sharpness of the knife, nature
or existence of wounds, manner of its use, testimony of its life-threatening capabilities, and
the physical proximity of the accused and the victim. Thomas, 821 S.W.2d at 620; see also
Davis v. State, 22 S.W.3d 638, 641 (Tex.App.-Waco 2000, pet. ref'd); Garcia v. State, 17
S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). The essential question is
determining whether sufficient evidence was presented to establish that a defendant used or
intended to use the knife in a manner "capable" of causing serious bodily injury or death. 
Alvarez v. State, 566 S.W.2d 612, 614 (Tex.Cr.App. 1978). 

 Complainant testified on direct examination that appellant pulled a knife out from
under his shirt and just stood across the bedroom demanding the money. No other testimony
was elicited from her on direct examination regarding the knife. On cross-examination, she
testified that she did not know where the knife had come from and that appellant was not in
close proximity to her when he pulled the knife out from under his shirt. Specifically, she
testified:

 A. He didn't come up on me with the knife, or anything like that 

 Q. Did he ever hold it up against you, or anything like that?

 A. No.

 Q. How was he holding the knife?

 A. He was holding it, you know, like this. 

 Q. Out in front, like this, with the blade pointed upward?

 A. Yeah.

 Q. He wasn't holding it over his head with the blade down, in a stabbing
motion, or anything like that?

 A. No.

 Q. He wasn't holding it out in front of him, like he was going to puncture
somebody?

 A. No.

* * *


 Q. How close did the knife get to you?

 A. It didn't get close to me.

 Q. How close did it get to you? As close as when you handed him the money
and it was in the other hand, is that as close as it got?

 A. When he come out with the knife, he was, like - you know, holding it like
that.

 Q. So, it wasn't in a threatening manner?

 A. Not really.


On redirect examination, complainant testified that appellant was angry and that she was
scared; however, on recross-examination, she admitted that she is larger in stature than
appellant. 

 Other than the custodian of records for the 911 call, the State's only other witness was
Officer Douglas Sutton, a criminal investigator for the Lubbock Police Department. On direct
examination he testified he was assigned complainant's case, and although he explained that
due to his caseload he delayed in contacting complainant to make a statement, she testified
that she delayed until February 2002 to give her statement to the police because she was
angry with appellant for something else he had done unrelated to the occurrence in July 2001.

 The only other evidence regarding knives in general came from Officer Sutton in the
following testimony:

 Q. Is a knife capable of being used as a deadly weapon?

 A. Yes, it is.

 Q. And is a knife capable of causing death or serious bodily injury?

 A. Yes.

 Q. And can a knife be used to threaten a person with imminent bodily injury?

 A. Yes, it can.


 Although the knife appellant pulled out from under his shirt was not introduced into
evidence, and it is not necessary to do so, no evidence regarding that particular knife was
introduced. Complainant could not identify the knife nor whether it came from her house. 
Neither was she asked to describe it by size, shape, or sharpness. No evidence was
presented describing the knife's life-threatening capabilities and the only evidence of the
manner of its use came from complainant's testimony that appellant was not holding the knife
in a threatening manner. The evidence merely established that appellant held a knife. 
Furthermore, Officer Sutton was only asked general questions regarding the capability of a
knife being a deadly weapon and did not offer any evidence regarding the particular knife
appellant possessed. Additionally, the evidence established that appellant did not make any
physical threats or motions and the only verbal statement made was to "give him the damn
money." See generally Victor, 874 S.W.2d at 751-52 (noting that the pocket knife was not
introduced into evidence, there was no evidence describing the knife, and a police officer's
opinion testimony that a pocket knife is a deadly weapon was insufficient to establish that it
was capable of causing death or serious bodily injury). Thus, we conclude the evidence was
legally and factually insufficient to establish that appellant "used" a deadly weapon.

 We have not overlooked the State's reliance on McCain in support of its argument that
a weapon is "used" or "exhibited" if it facilitates the underlying crime. 22 S.W.3d at 503. 
However, in order to conclude that a weapon is "used" or "exhibited" to instill apprehension
in the victim thereby facilitating the crime, McCain first requires an affirmative answer to the
question whether an object can be a deadly weapon under the facts of the case. Id. at 502. 
Under the facts of the underlying case, there is no evidence to show that the knife appellant
possessed was a deadly weapon. McCain is distinguishable because the evidence showed
that a nine-inch butcher knife was used in a violent attack and the defendant was indicted for
using and exhibiting a deadly weapon, whereas appellant was only indicted for "use" of a
deadly weapon. We conclude the State did not satisfy its burden to affirmatively show that
the knife appellant possessed was a deadly weapon; thus, we need not decide whether it was
"used" as charged in the indictment. Appellant's sole issue is sustained.

 The jury was instructed that if there was reasonable doubt that appellant used a deadly
weapon, it was to find him guilty of the lesser included offense of "assault by threatening
[complainant] with imminent bodily injury." A person commits a Class C misdemeanor assault
if he intentionally or knowingly threatens another with imminent bodily injury, including the
person's spouse. Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon 2003). The conduct prohibited
by section 22.01(a)(2) is making a threat regardless of a deadly weapon. Edwards v. State,
57 S.W.3d 677, 679 (Tex.App.-Beaumont 2001, pet. ref'd). A threat can be communicated
by conduct as well as by words. McGowan v. State, 664 S.W.2d 355, 375 (Tex.Cr.App.
1984) (en banc). The gist of assault is that one acts with intent to cause a reasonable
apprehension of imminent bodily injury. Garrett v. State, 619 S.W.2d 172, 174 (Tex.Cr.App.
[Panel Op.] 1981). In order to prove intent to threaten with bodily injury, there must be
sufficient evidence that the actor intended to intimidate the victim and the victim's perception
of a threat. Edwards, 57 S.W.3d at 680. Complainant testified that appellant was angry
when he persisted that she "give him the damn money" and that she returned the money
because she was "scared." Viewing complainant's testimony in the light most favorable to
the prosecution under Jackson, a rational jury could have found beyond a reasonable doubt
that appellant threatened complainant with imminent bodily injury. However, in conducting
a neutral review of all the record evidence under Johnson, we cannot conclude that the
evidence is factually sufficient to support a conviction for assault. 

 Accordingly, the judgment for aggravated assault with a deadly weapon is reversed
and a judgment of acquittal is hereby rendered; the cause is remanded for a new trial on the
lesser included offense of assault. 

 Don H. Reavis

 Justice


Do not publish.
1. Tex. R. App. P. 47.2(a).
2. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560,
573 (1979); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000); Clewis v. State, 922
S.W.2d 126, 133 (Tex.Cr.App. 1996).



dException Locked="false" Priority="33" SemiHidden="false"
 UnhideWhenUsed="false" QFormat="true" Name="Book Title"/>
 
 
 









NO. 07-09-00234-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



APRIL
6, 2010

 



 

THE STATE OF TEXAS, APPELLANT

 

v.

 

CHRIS ALLEN MCLAIN, APPELLEE 



 



 

 FROM THE 242ND DISTRICT COURT OF HALE
COUNTY;

 

NO. B18002-0904; HONORABLE EDWARD LEE SELF, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

 

OPINION

The State of Texas appeals the
granting of a motion to suppress by the trial court.[1]  Appellee, Chris Allen McLain, was arrested
and indicted for possession with intent to deliver a controlled substance,
methamphetamine, in an amount of four grams or more but less than 200 grams.[2]  We affirm.

 

Factual and Procedural Background

On February 27, 2009, a Plainview
police officer presented an affidavit requesting a search warrant to search a
business and residence at 3607 North Columbia in Plainview, Texas.  The affidavit further alleged that the
location to be searched was controlled by appellee.  A search was conducted and officers found
several items of contraband, among which was over 100 grams of methamphetamine.


 A Hale County Grand Jury subsequently indicted
appellee on a charge of possession with intent to
deliver methamphetamine, in an amount of four grams or more but less than 200
grams.  Appellees
trial counsel filed a motion to suppress the contraband seized as a result of
the search authorized by the warrant. 
The trial court held a hearing on appellees
motion to suppress on June 29, 2009.  At
the conclusion of the hearing, the trial court requested briefs from both
parties setting forth their arguments. 
After receiving the briefs, the trial court granted the motion to
suppress on July 14, 2009.  At the
request of the State, the trial court filed findings of fact and conclusions of
law on July 15, 2009.

The State has brought forth two
issues on appeal.  First, the State
contends that the trial court abused its discretion by granting the motion to
suppress.  Second, the State alleges that
the good faith exception contained in article 38.23 of the Texas Code of
Criminal Procedure[3]
applies.  Disagreeing with the State, we
will affirm the judgment of the trial court.

Standard of Review

The State contends that the trial
court abused its discretion when it granted the appellees
motion to suppress the evidence seized when the search warrant was served.  We normally review a trial courts ruling on
a motion to suppress by using a bifurcated standard of review, wherein we give
almost total deference to the historical facts found by the trial court and
review de novo the trial courts
application of the law.  Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App.
2007).  However, when the trial
court is determining probable cause to support the issuance of a search warrant
there are no credibility determinations, rather the trial court is constrained
to the four corners of the affidavit.  Hankins v. State, 132 S.W.3d 380, 388 (Tex.Crim.App.
2004).  Accordingly, when we
review the magistrates decision to issue a warrant, we apply a highly
deferential standard.  Swearingen v.
State, 143 S.W.3d 808, 810-11 (Tex.Crim.App.
2004).  We apply this deferential
standard because we have a constitutional preference for searches to be
conducted pursuant to a warrant as opposed to warrantless searches.  Id. at 810. (citing Illinois v. Gates, 462 U.S. 213, 234-37, 76
L.Ed.2d 527, 103 S.Ct. 2317 (1983)).  As long as the magistrate had a substantial
basis for concluding that probable cause existed, we will uphold the
magistrates probable cause determination. 
Gates, 462 U.S. at 236.  

For purposes of our review, we will
find probable cause to exist when the affidavit shows facts and circumstances
within the affiants knowledge to warrant a person of caution to believe that
1) a specific offense has been committed, 2) the property to be searched or
items to be seized constitute evidence of the offense or evidence that a
particular person committed the offense, and 3) the property or items are
located at or on the person, place, or thing to be searched.  Art. 18.01(c); Hughes v.
State, 843 S.W.2d 591, 593 (Tex.Crim.App. 1992).  Finally, we are instructed not to analyze the
affidavit in a hyper-technical manner.  Gates,
462 U.S. at 236.  Rather, when we review
the magistrates determination, we should interpret the affidavit in a
commonsensical and realistic manner, recognizing that the magistrate may draw
reasonable inferences.  Rodriguez v. State, 232 S.W.3d 55, 61 (Tex.Crim.App.
2007).  

Analysis

According to the findings of fact
issued by the trial court, the court found that the affidavit lacked any
specificity regarding when the matters referenced within its four corners
occurred.  The only mention of time
within the four corners of the affidavit is the following statement: In the
past 72 hours, a confidential informant advised the Affiant that Chris was seen
in possession of a large amount of methamphetamine at his residence and
business.  The State urges that we view
this statement as implying that the observation of the methamphetamine occurred
within the 72 hours before the execution of the affidavit.  However, such an implication is not supported
by the plain text of the affidavit.  We
agree with the trial court that, given a common sense reading, the affidavits
reference to the past 72 hours speaks to when the affiant spoke to the
confidential informant, not when the confidential informant acquired the
information.

 
All we can determine from the four corners of the affidavit is when the
affiant spoke to the confidential informant. 
As the only time reference given in the affidavit is the one described
above, the affidavit fails to provide probable cause for it fails to meet the
requirements of article 18.01(c).  See
art. 18.01(c). 
The affidavit fails to give the magistrate any idea of when any of the
activity which allegedly supports the issuance of a warrant occurred.  See Davis v. State, 202 S.W.3d 149, 155 (Tex.Crim.App.
2006).  The failure to describe when the
events referred to took place is fatal to the efficacy of the affidavit.  Schmidt v. State,
659 S.W.2d 420, 421 (Tex.Crim.App. 1983).  Because the affidavit fails to meet the
requirements of article 18.01(c), there can be no probable cause for the
issuance of a search warrant.  Id.  Accordingly, the trial court did not abuse
its discretion in granting appellees motion to
suppress.  We, therefore, overrule the
States first issue.

Article 38.23(b)

We will next address the States
second contention.  The State alleges,
because appellees motion to suppress was based on
claims that the search in question violated the Fourth Amendment to the United
States Constitution and Article I, section 9 of the Texas Constitution and did
not specifically request exclusion of the evidence pursuant to article
38.23(a), that the good faith exception of article 38.23(b) applies to allow
the State to use the evidence.

First, the position of the State
ignores the plain language of article 38.23(b),   which states:

It is an exception to the provisions of Subsection (a) of this Article
that the evidence was obtained by a law enforcement officer acting in objective
good faith reliance upon a warrant issued by a neutral magistrate based on
probable cause.

art. 38.23(b).

            When we construe a statute, we look at the plain meaning
of the words used in the statute unless the language is ambiguous or its plain
meaning leads to absurd results.  Swearingen
v. State, No. AP-76,073, 2010 Tex.Crim.App.
LEXIS 9, at *8 (Tex.Crim.App.
February 10, 2010).  Looking at the plain
meaning of the statute, it is clear, that in order for the exception that the
State urges to apply, there must first be probable cause.  See Carroll v. State, 911 S.W.2d 210, 223 (Tex.App.Austin
1995, no pet.) (citing Curry v. State, 808
S.W.2d 481, 482 (Tex.Crim.App 1991)).  Inasmuch as we have determined that the trial
court did not abuse its discretion in finding that the affidavit in support of
the search warrant did not provide probable cause, the exception of article
38.23(b) does not apply.  Therefore, we
overrule the States second issue.

Conclusion

            Having
overruled the States issues, we affirm the trial courts judgment.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Publish. 

Pirtle, J., concurring.  

 











[1]
See
Tex. Code Crim. Proc.
Ann. art. 44.01(a)(5) (Vernon 2007).

 





[2] See Tex.
Health & Safety Code Ann. § 481.112(a), (d) (Vernon Supp. 2009)





[3]
Further reference to the Texas Code of Criminal
Procedure will be by reference to article __ or art. __.