NO. 07-02-0388-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 17, 2003

_____

CLARENCE L. HOOKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-439900; HONORABLE CECIL PURYEAR, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION[1]**

Pursuant to a plea of not guilty, appellant Clarence L. Hooker was convicted of aggravated assault with a deadly weapon, enhanced, and punishment was assessed at 35

---

[1]Tex. R. App. P. 47.2(a).

years confinement. By a sole issue, he contends the evidence is insufficient to prove he used a deadly weapon to threaten the victim. Based upon the rationale expressed herein, we reverse and render in part; and remand the cause to the trial court for further proceedings.

Complainant testified that she and appellant dated for approximately eight years and were still together at the time of trial. According to her testimony, on July 12, 2001, appellant willingly gave her $10 to purchase household cleaning supplies and on the following day gave her an additional $20 to purchase medicine. Later that day upon entering her home, she found appellant there, which she testified was not unusual. Without speaking to him, she immediately went into her bedroom to put on her nightgown. After changing, she turned around and discovered that appellant was standing in the bedroom in front of a closed door demanding the return of his $30. She returned $10 and explained to him that she needed the money. However, appellant persisted and told her to "give him the damn money." According to complainant, he pulled a knife out from his shirt and she complied. However, she also testified that appellant was standing on the other side of the bedroom and did not point the knife in a threatening manner nor verbally threaten her. After appellant left, she called 911 to report the incident; however, no formal statement was given to the police until February 8, 2002.

The indictment against appellant recites that he

did then and there intentionally and knowingly threaten [complainant] with imminent bodily injury and did then and there use a deadly weapon, to-wit: a

2

knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury . . . .

Appellant was not charged with "exhibiting" a deadly weapon. By his sole issue, he challenges the legal and factual sufficiency of the evidence to prove that he "used" a knife as a deadly weapon to threaten complainant. We agree. The standards of review for legal and factual sufficiency of the evidence are well established and need not be detailed.[2]

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. A person commits aggravated assault if during the commission of an assault as defined in section 22.01 of the Penal Code that person uses or exhibits a deadly weapon. Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon 2003). Deadly weapon is defined in section 1.07 of the Penal Code as follows:

> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Pen. Code Ann. § 1.07(17) (A) and (B) (Vernon 2003). Recently, the Court of Criminal Appeals, in interpreting a statute in accordance with the plain meaning of its language, concluded that utility knives, butcher knives, eating utensils, and straight razors, having an

---

[2]See *Jackson* v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996).

obvious purpose apart from inflicting death or serious bodily injury, do not qualify as deadly weapons under subsection (17)(A). McCain v. State, 22 S.W.3d 497, 502-03 (Tex.Cr.App. 2000) (en banc). Instead, the Court emphasized that the placement of the word "capable" in subsection (17)(B) applies to any object, including a knife, that in the manner of its use or intended use threatens deadly force even if the actor does not intend to actually use deadly force. *Id*. In *McCain*, the Court in its analysis first inquired whether the butcher knife could be a deadly weapon and then noted that if that question was affirmatively answered, a determination could then be made on whether the knife was "used" or "exhibited" during the offense. *Id*. Thus, our initial inquiry in the underlying case is whether the knife appellant pulled out from under his shirt qualifies as a deadly weapon as defined in section 1.07(17)(B), *i.e.*, capable of causing death or serious bodily injury in the manner of its use or intended use.

Whether a particular knife is a deadly weapon depends upon the evidence presented. Thomas v. State, 821 S.W.2d 616, 620 (Tex.Cr.App. 1991). This Court has previously recognized that expert testimony is not required to determine the nature of a weapon nor is it necessary that the weapon be introduced into evidence for the State to meet its burden of proof. *See* Aleman v. State, 795 S.W. 2d 332, 335 (Tex.App.–Amarillo 1990, no pet.), citing Morales v. State, 633 S.W.2d 866, 868 (Tex.Cr.App. [Panel Op.] 1982). Also, it is unnecessary to show that any wounds were inflicted. Davidson v. State, 602 S.W.2d 272, 273 (Tex.Cr.App. [Panel Op.] 1980). However, where no actual injury is sustained, the State must present evidence of other factors to establish that a knife is a deadly weapon. *See*

4

Victor v. State, 874 S.W.2d 748, 751 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd). Factors to consider in that determination include the dimensions and sharpness of the knife, nature or existence of wounds, manner of its use, testimony of its life-threatening capabilities, and the physical proximity of the accused and the victim. *Thomas*, 821 S.W.2d at 620; *see also* Davis v. State, 22 S.W.3d 638, 641 (Tex.App.–Waco 2000, pet. ref'd); Garcia v. State, 17 S.W.3d 1, 4 (Tex.App.–Houston [1st Dist.] 1999, pet. ref'd). The essential question is determining whether sufficient evidence was presented to establish that a defendant used or intended to use the knife in a manner "capable" of causing serious bodily injury or death. Alvarez v. State, 566 S.W.2d 612, 614 (Tex.Cr.App. 1978).

Complainant testified on direct examination that appellant pulled a knife out from under his shirt and just stood across the bedroom demanding the money. No other testimony was elicited from her on direct examination regarding the knife. On cross-examination, she testified that she did not know where the knife had come from and that appellant was not in close proximity to her when he pulled the knife out from under his shirt. Specifically, she testified:

> A. He didn't come up on me with the knife, or anything like that
> Q. Did he ever hold it up against you, or anything like that?
> A. No.
> Q. How was he holding the knife?
> A. He was holding it, you know, like this.
> Q. Out in front, like this, with the blade pointed upward?

A. Yeah.

Q. He wasn't holding it over his head with the blade down, in a stabbing motion, or anything like that?

A. No.

Q. He wasn't holding it out in front of him, like he was going to puncture somebody?

A. No.

* * *

Q. How close did the knife get to you?

A. It didn't get close to me.

Q. How close did it get to you? As close as when you handed him the money and it was in the other hand, is that as close as it got?

A. When he come out with the knife, he was, like – you know, holding it like that.

Q. So, it wasn't in a threatening manner?

A. Not really.

On redirect examination, complainant testified that appellant was angry and that she was scared; however, on recross-examination, she admitted that she is larger in stature than appellant.

Other than the custodian of records for the 911 call, the State's only other witness was Officer Douglas Sutton, a criminal investigator for the Lubbock Police Department. On direct examination he testified he was assigned complainant's case, and although he explained that due to his caseload he delayed in contacting complainant to make a statement, she testified

6

that she delayed until February 2002 to give her statement to the police because she was angry with appellant for something else he had done unrelated to the occurrence in July 2001.

The only other evidence regarding knives in general came from Officer Sutton in the following testimony:

Q. Is a knife capable of being used as a deadly weapon?
A. Yes, it is.
Q. And is a knife capable of causing death or serious bodily injury?
A. Yes.
Q. And can a knife be used to threaten a person with imminent bodily injury?
A. Yes, it can.

Although the knife appellant pulled out from under his shirt was not introduced into evidence, and it is not necessary to do so, no evidence regarding that particular knife was introduced. Complainant could not identify the knife nor whether it came from her house. Neither was she asked to describe it by size, shape, or sharpness. No evidence was presented describing the knife's life-threatening capabilities and the only evidence of the manner of its use came from complainant's testimony that appellant was not holding the knife in a threatening manner. The evidence merely established that appellant held a knife. Furthermore, Officer Sutton was only asked general questions regarding the capability of a knife being a deadly weapon and did not offer any evidence regarding the particular knife appellant possessed. Additionally, the evidence established that appellant did not make any

7

physical threats or motions and the only verbal statement made was to "give him the damn money." *See generally Victor*, 874 S.W.2d at 751-52 (noting that the pocket knife was not introduced into evidence, there was no evidence describing the knife, and a police officer's opinion testimony that a pocket knife is a deadly weapon was insufficient to establish that it was capable of causing death or serious bodily injury). Thus, we conclude the evidence was legally and factually insufficient to establish that appellant "used" a deadly weapon.

We have not overlooked the State's reliance on *McCain* in support of its argument that a weapon is "used" or "exhibited" if it facilitates the underlying crime. 22 S.W.3d at 503. However, in order to conclude that a weapon is "used" or "exhibited" to instill apprehension in the victim thereby facilitating the crime, *McCain* first requires an affirmative answer to the question whether an object can be a deadly weapon under the facts of the case. *Id*. at 502. Under the facts of the underlying case, there is no evidence to show that the knife appellant possessed was a deadly weapon. *McCain* is distinguishable because the evidence showed that a nine-inch butcher knife was used in a violent attack and the defendant was indicted for using and exhibiting a deadly weapon, whereas appellant was only indicted for "use" of a deadly weapon. We conclude the State did not satisfy its burden to affirmatively show that the knife appellant possessed was a deadly weapon; thus, we need not decide whether it was "used" as charged in the indictment. Appellant's sole issue is sustained.

The jury was instructed that if there was reasonable doubt that appellant used a deadly weapon, it was to find him guilty of the lesser included offense of "assault by threatening

8

[complainant] with imminent bodily injury." A person commits a Class C misdemeanor assault if he intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon 2003). The conduct prohibited by section 22.01(a)(2) is making a threat regardless of a deadly weapon. Edwards v. State, 57 S.W.3d 677, 679 (Tex.App.–Beaumont 2001, pet. ref'd). A threat can be communicated by conduct as well as by words. McGowan v. State, 664 S.W.2d 355, 375 (Tex.Cr.App. 1984) (en banc). The gist of assault is that one acts with intent to cause a reasonable apprehension of imminent bodily injury. Garrett v. State, 619 S.W.2d 172, 174 (Tex.Cr.App. [Panel Op.] 1981). In order to prove intent to threaten with bodily injury, there must be sufficient evidence that the actor intended to intimidate the victim and the victim's perception of a threat. *Edwards*, 57 S.W.3d at 680. Complainant testified that appellant was angry when he persisted that she "give him the damn money" and that she returned the money because she was "scared." Viewing complainant's testimony in the light most favorable to the prosecution under *Jackson*, a rational jury could have found beyond a reasonable doubt that appellant threatened complainant with imminent bodily injury. However, in conducting a neutral review of all the record evidence under *Johnson*, we cannot conclude that the evidence is factually sufficient to support a conviction for assault.

Accordingly, the judgment for aggravated assault with a deadly weapon is reversed and a judgment of acquittal is hereby rendered; the cause is remanded for a new trial on the lesser included offense of assault.

Don H. Reavis
Justice

Do not publish.