**Raymond Bernard HUTCHISON,**

v.

**BROOKSHIRE BROTHERS, LTD., The City of Dayton, Texas, Conoco Incorporated, Craig McCown, Thaketcha Hill and Dennis Shelton.**

No. 1:01–CV–539.

United States District Court,
E.D. Texas,
Sherman Division.

Sept. 30, 2003.

Grantham Harlan Coleman, Houston, TX, for Plaintiffs.

William S. Helfand and Norman Ray Giles of Magenhein, Bateman & Helfand, Houston, TX, for City of Dayton, Richard Craig McCown, defendants.

Lipscomb Norvell, Jr. of Benckenstein, Norvell & Nathan, Beaumont, TX, Warren Reid Williams, Conco, Inc. Legal Dept., Houston, TX, for Conoco, Inc., defendant.

David L. Allen, Joseph Martin McElroy of Zeleskey, Cornelius, Hallmark, Roper & Hicks, Lufkin, TX, for Thaketcha Hill, Dennis Shelton, Brookshire Bros., defendants.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

SCHELL, District Judge.

This case originated in this court when Plaintiff Raymond Bernard Hutchinson filed various state and constitutional tort claims arising from injuries he allegedly sustained siphoning gasoline at a gas station owned by Brookshire Brothers, Ltd. Plaintiff filed suit against several defendants including Brookshire Brothers and two of its employees, Dennis Shelton and Thaketcha Hill; Conoco, Inc.; the City of Dayton, Texas; the Dayton Police Department; and Richard Craig McCown, one of the city's police officers. Plaintiff claims Defendants are jointly and severally liable for his injuries.

The court now considers "Defendants Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Motion for Summary Judgment" filed August 30, 2002. (Dkt.# 47).

## I. JURISDICTION

Jurisdiction is proper in this court under 28 U.S.C. §§ 1331 & 1367 (2000). Plaintiff alleges that Officer McCown violated his Fourth and Fourteenth Amendment rights. Title 42 U.S.C. § 1983 (2000) extends federal question jurisdiction to Plaintiff's constitutional tort claims. Supplemental jurisdiction is available over the remainder of Plaintiff's tort claims. 28 U.S.C. § 1367(a); *see, e.g., Raygor v. Regents of University of Minnesota,* 534 U.S. 533, 539–40, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002).

## II. FACTUAL BACKGROUND

Plaintiff has made the following allegations. Unless otherwise noted, the parties are advised not to construe the following as findings of fact made by the court.[1]

1. In "Defendants Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Motion for Summary Judgment," Defendants state, "the Defendants are mindful of the court's conclusion on Page 8 of its summary judgment ruling where the Court reads the evidence on Page 50, Lines 10–19 to create an inference that Defendant Shelton 'insisted Plaintiff suck out the gas.'" Defs.' Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J. at 7. Additionally, Plaintiff states in "Plaintiff's Response to Defendants' Motion for Summary Judgment" that "[t]his Court, through evidence submitted by Plaintiff, deduced that the calling of Shelton and the arrival of Officer

On August 3, 1999, Plaintiff stopped at a Conoco Gas Station managed by Brookshire Brothers, located in the City of Dayton, Texas. Plaintiff prepaid for $8.00 worth of gas and then asked Thaketcha Hill, an employee of Brookshire Brothers, to set the pump to shut off after $8.00 was pumped. Dep. of Raymond Bernard Hutchison at 48. It is undisputed that Plaintiff then pumped more than $8.00 worth of gas. According to Plaintiff, he set the pump handle to pump gas automatically and then attended to his vehicle. *Id.* When Plaintiff noticed the pump had not been turned off at $8.00, he alleges that he shut off the pump and asked Hill why she did not shut off the pump at $8.00 as requested. *Id.* Hill was indifferent, but insisted that Plaintiff pay the additional $10.63 that was pumped. *Id.* Plaintiff stated that he did not have the additional money, and Hill directed Plaintiff to take the matter up with her manager. *Id.*

Dennis Shelton, manager of the Brookshire Brothers store, reiterated Hill's position that Plaintiff had to pay for the extra gas pumped. Plaintiff then offered to leave his driver's license and several work tools with Shelton as proof that he would return later and pay the remaining amount. Dep. of Raymond Bernard Hutchison at 49, 51. Shelton refused and demanded immediate payment or else Plaintiff and his vehicle would not be allowed to leave the premises. Dep. of Raymond Bernard Hutchison at 49. When Plaintiff suggested Shelton retrieve the excess gas, Shelton refused and stated he would supply a water bucket and hose for Plaintiff to use to siphon the gas from the vehicle. Dep. of Raymond Bernard Hutchison at 50. Plaintiff refused to do so. *Id.*

At this point, Shelton called the Dayton Police Department. *Id.* When police officer Richard Craig McCown arrived, Shelton told him what had happened. Dep. of Raymond Bernard Hutchison at 51. Shelton allegedly insisted Plaintiff be forced to siphon the gas from his vehicle. Pl.'s Resp. to Defs.' Mot. for Summ. J. at unnumbered 3,4.[2] According to Plaintiff, McCown agreed that Plaintiff had to suck and siphon at least $10.63 worth of gasoline from his vehicle or else "come go with him," as he adjusted his hand on his gun holster. Pl.'s Second Am. Original Compl., ¶ 10.

Allegedly knowing that such an activity was dangerous to his health, but fearing jail or worse from McCown, Plaintiff began to siphon the gas from his vehicle. Pl.'s Second Am. Original Compl., ¶ 10; Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6. As Plaintiff sucked the gas from the vehicle with minimal success, McCown demanded Plaintiff try harder. Pl.'s Second Am. Original Compl., ¶ 11. After a longer hose was brought to Plaintiff, he proceeded to suck and siphon ten buckets of gas from his vehicle before he was allowed to stop. Pl.'s Second Am. Original Compl., ¶ 12. During this time, Plaintiff says he was forced to inhale the gasoline fumes and swallow gasoline down his throat. Pl.'s Second Am. Original Compl., ¶ 13. In addition, those passing by witnessed Plain-

McCown on the scene at the adamant refusal to siphon gas by the Plaintiff began the ratification of the conspiracy." Pl.'s Resp. to Defs.' Mot. for Summ. J. at unnumbered 7.

Because of these statements, the court wants to clarify that it has not made any factual findings, conclusions or deductions, but instead has merely inquired as to whether Plaintiff has stated proper claims and prof-

fered adequate evidence such that a jury could, if so convinced, rule in favor of the Plaintiff. *See* Fed. R. Civ. P. 12(b) & 56.

**2.** Plaintiff did not number the pages in his response to the instant motion. In the future, the court requests that Plaintiff number the pages for easier reference.

tiff's humiliation. Pl.'s Second Am. Original Compl., ¶ 12.

The process of siphoning the gas from his vehicle left Plaintiff light headed and dizzy. Pl.'s Second Am. Original Compl., ¶ 13. In addition, Plaintiff claims that his eyes watered constantly, and his lips, mouth, tongue, and throat felt "as if they were being burned by fire." *Id.* Plaintiff further alleges that his "stomach began to burn as if a million needles were being pressed against the inside of his stomach." *Id.* Plaintiff complained to Shelton and McCown about these symptoms, but he says he was "forced" to continue siphoning. *Id.*

After Plaintiff was permitted to leave the premises, he claims that he could only drive a short distance before he allegedly began to pass out. Pl.'s Second Am. Original Compl., ¶ 14. He further claims that his symptoms intensified and he began to vomit uncontrollably. *Id.*

Plaintiff then drove himself to Memorial Hospital in Houston, Texas. Pl.'s Second Am. Original Compl., ¶ 15. After treatment, Plaintiff left the hospital but had to return one hour later when he "began to vomit repeatedly, suffered severe abdominal pain, hot and cold flashes, mouth dryness and intense burning sensation from efforts to urinate and belch." Pl.'s Second Am. Original Compl., ¶ 16.

## III. PROCEDURAL POSTURE

On August 3, 2001, Plaintiff filed an original complaint alleging five counts against Defendants. Count I alleged that each of the individual defendants conspired to deprive Plaintiff of certain constitutional rights including the "rights to freedom from illegal search and seizure, illegal arrest and detention, from illegal abuse coercion and intimidation, from cruel and unusual punishment, and from violations of his civil rights under Section 1983 of the United States Constitution."[3] Pl.'s Original Compl., ¶ 18. Count II alleged that the actions of Defendants jointly and severally amount to an "intentional infliction of physical and emotional distress." Pl.'s Original Compl., ¶¶ 20–22. Count III alleged that the "use of force by the Defendants" to force Plaintiff to ingest gasoline amounts to an assault and battery. Pl.'s Original Compl., ¶¶ 23–25. Count IV alleged that Defendants' actions constitute "malicious abuse of process, false arrest and false imprisonment." Pl.'s Original Compl., ¶¶ 26–29. Finally, Plaintiff's Count V alleged that, under the doctrine of respondeat superior, Defendants Brookshire Brothers and Conoco Inc. and the City of Dayton "are jointly responsible and liable ... for the actions of their employees." Pl.'s Original Compl., ¶¶ 30–32.

After ruling on a series of dispositive motions,[4] the following claims remain be-

---

3. Presumably, Plaintiff is referring to Title 42 U.S.C. § 1983.

4. On November 20, 2001, the court granted Plaintiff's motion for nonsuit against Defendant Conoco, Inc., and dismissed Conoco without prejudice. Ord. of Dismissal (Nov. 20, 2001).

On February 19, 2002, the City of Dayton, the Dayton Police Department and Officer Craig McCown filed a motion to dismiss. Defs. City of Dayton, Texas, Dayton Police Dept. and Richard Craig McCown's Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement. Thereafter, the court dismissed a number of Plaintiff's claims against

the City of Dayton, the Dayton Police Department and Officer Craig McCown. Op. and Order Grant'g. in Part and Den. in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 32 (May 23, 2002). Specifically, the court dismissed all of Plaintiff's claims against the Dayton Police Department after finding that the City of Dayton, a home rule municipality, had never granted to its police force the power to sue and be sued. Op. and Order Grant'g. in Part and Den. in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 10. Additionally, the court dismissed Plaintiff's Eighth Amendment, intentional infliction of emotional distress, assault and battery,

fore the court: (1) conspiracy to violate civil rights under the Fourth Amendment against McCown, Brookshire Brothers, Shelton and Hill, and under the Fourteenth Amendment against Brookshire Brothers, Shelton and Hill; (2) intentional infliction of emotional distress against Brookshire Brothers, Shelton and Hill; (3) assault and battery against Brookshire Brothers, Shelton and Hill; and (4) false imprisonment against Brookshire Brothers, Shelton and Hill. (Op. and Order Grant'g in Part Defs.' Mot. for Summ. J. at 18.) These are the claims relevant to the motion currently before the court, which is "Defendants Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Motion for Summary Judgment."

## IV. SUMMARY JUDGMENT STANDARD

■■■ The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's

abuse of process, official oppression, false arrest, respondeat superior and state law claims filed against the City of Dayton. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 10–32. Finally, the court dismissed Plaintiff's Eighth Amendment, Fourteenth Amendment, abuse of process, official oppression, and false arrest claims filed against Officer McCown. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 10–32.

In addition to the claims dismissed pursuant to Defendants' 12(b)(6) motion, the court disposed of a number of Plaintiff's claims on summary judgment. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 7–17 (Aug. 13, 2002). Specifically, the court granted summary judgment in favor of the City of Dayton with respect to Plaintiff's conspiracy to violate the Fourth Amendment claim, Plaintiff's conspiracy to violate the Fourteenth Amendment claim, and Plaintiff's § 1983 claim. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 12. Further, the court granted summary judgment in favor of Officer McCown with respect to Plaintiff's intentional infliction of emotional distress claim, Plaintiff's assault and battery claim, and Plaintiff's false imprisonment claim. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 15–18. The elimination of Plaintiff's conspiracy to violate the Fourteenth Amendment claim against the City of Dayton extinguished the last of Plaintiff's claims against officer McCown in his official capacity. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 11.

claims. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

 Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175–76 (5th Cir.1990). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## V. ANALYSIS

### A. Thaketcha Hill's Alleged Involvement

Having reviewed Plaintiff's summary judgment evidence,[5] the court finds that all claims against Thaketcha Hill should be dismissed.

It is undisputed that Thaketcha Hill was an attendant at the Brookshire Brothers station where the relevant events occurred. Plaintiff alleges that Hill failed "to perform her occupational duties by properly setting the pump as requested and paid for by Plaintiff." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2. Additionally, Plaintiff alleges that Hill "summoned her manager so that he could rectify the problem she caused," and that Hill further called the police department upon request from her manager, Shelton. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2. Finally, Plaintiff alleges that Hill "took no part of the blame for the situation that she caused." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2. Plaintiff supports the preceding allegations through his own deposition testimony. Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 1; Pl.'s Dep. at 48–49.

Consistent with Plaintiff's allegations, Defendants allege that the "interaction between Defendant Hill and the Plaintiff is practically nothing." Defs. Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J. at 4. The parties have thus agreed on the material facts regarding Thaketcha Hill, and this issue is therefore ripe for summary judgment.

While it is possible that, in another action at another time, Plaintiff could have succeeded against Thaketcha Hill on a breach of contract theory, the court finds no allegation or evidence supplied by Plaintiff upon which to conclude that Hill participated in or proximately caused any of the torts allegedly perpetrated by Shelton and McCown. Instead, Plaintiff succeeds only in stating that Hill went about her job with casual indifference, an attitude that, while disheartening, does not violate the Fourth Amendment and does

5. Where the court refers to Plaintiff's summary judgment evidence, the court refers to eight pages of deposition testimony, numbered 48 through 54, attached as Exhibit 1 to "Plaintiff's Response to Defendants' Motion for Summary Judgment." Pl.'s Dep. at 48–54. Plaintiff has submitted no other evidence, and Plaintiff's response to Defendants' summary judgment motion references no other evidence. Further, Plaintiff states in his response that "Plaintiff now submits a response to the Motion for Summary Judgment of the Remaining Defendants, and thus this Response addresses *all* of those points." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2 (emphasis added). Based on Plaintiff's statements and actions, the court concludes that Plaintiff has chosen, for whatever reason, to limit the summary judgment evidence to these eight pages of testimony.

not, without more, rise to the level of a tort.

Hill's actions are so factually attenuated from the gravamen of Plaintiff's complaint that this court would be remiss in saddling her with liability. First, Plaintiff fails to allege facts indicating that Thaketcha Hill sought to accomplish any objective that runs afoul of the Fourth Amendment. See Pl.'s Dep at 48–54. Second, Plaintiff fails to allege facts that would allow the court or a jury to infer that Hill actually participated in any of the illegal actions. See *Id.* Indeed, Plaintiff did not even allege that Hill remained present during the siphoning. *Id.* Finally, Plaintiff fails to allege any facts that would allow the court or a jury to conclude that Hill's behavior was a proximate cause of Plaintiff's injury, which was inflicted, if at all, through the actions of other individuals over whom Hill had neither authority nor control.

For the foregoing reasons, Hill cannot be held to have either violated the Fourth or Fourteenth Amendments or to have conspired to do so. Neither has Plaintiff's proffered evidence created a fact issue on his allegation that Hill intentionally inflicted emotional distress upon Plaintiff, assaulted Plaintiff, battered Plaintiff or falsely imprisoned him. Defendants' motion for summary judgment is GRANTED with respect to Hill.

## B. Plaintiff's Civil Rights Claims

Plaintiff contends that Defendants Brookshire Brothers and Shelton conspired with Officer McCown to violate Plaintiff's Fourth and Fourteenth Amendment Rights. Pl.'s Second Am. Original Compl., ¶ 18. In the alternative, Plaintiff claims that "each individual Defendant acted to deprive Plaintiff of his constitutional rights without justification or probable cause and is each individually liable." *Id.*

### (1) The Fourteenth Amendment

The Fourteenth Amendment provides that no state shall "deprive a person of life, liberty or property without due process of law." U.S. CONST. AMEND. XIV. Though the plain language of the Amendment seems to protect only procedural rights, the Supreme Court has long held that the due process clause of the Fourteenth Amendment has a substantive component. *See, e.g., Lawrence v. Texas,* —— U.S. ——, 123 S.Ct. 2472, 2476–77, 156 L.Ed.2d 508 (2003); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450 (5th Cir.1994) (citing *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The Fifth Circuit has held that "[t]his substantive component ... 'protects individual liberty against certain government actions....'" *Taylor Indep. Sch. Dist.,* 15 F.3d at 450 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)) (other internal quotations and citations omitted). For instance, " '[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process.' " *Id.* at 450–51 (quoting *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981)).

In the past, the Fifth Circuit has held that a significant injury intentionally inflicted by a police officer on a civilian could violate the substantive due process clause. *See, e.g., Shillingford,* 634 F.2d at 266 (holding that an officer who struck a civilian with his nightstick because he was annoyed that the civilian had taken his photograph had deprived the civilian of his Fourteenth Amendment rights). The rule in the Fifth Circuit has changed, however. *See Brown v. Glossip,* 878 F.2d 871, 873 (5th Cir.1989). In 1989, the Supreme Court held that "*all* claims that law enforcement officers have used excessive

force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court's holding in *Graham* effectively abrogated the rule stated in *Shillingford.* *Brown v. Glossip*, 878 F.2d at 873. The Fifth Circuit has held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against … physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir.1989) (quoting *Graham*, 490 U.S. at 386, 109 S.Ct. 1865).

■ Other theories of recovery exist under the Fourteenth Amendment, but none are applicable here.[6] Because Plaintiff has alleged facts suggesting an "unreasonable seizure" and not a violation of Plaintiff's substantive due process rights, Plaintiff's Fourteenth Amendment claims must be

**6.** Plaintiffs in other Fourteenth Amendment actions have succeeded against state officers on the "state-created danger" and "special relationship" theories. Under the state-created danger theory, an officer owes a duty to protect an individual when that officer affirmatively places that individual "in a position of danger, effectively stripping … her ability to defend herself, or cutting off potential sources of private aid." *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994) (citation omitted). However, the Fifth Circuit has never explicitly adopted the state-created danger theory, and it is unclear whether this theory is available at all in this Circuit. *Scanlan v. Texas A & M University*, 343 F.3d 533, 538 (5th Cir.2003); *McClendon v. City of Columbia*, 305 F.3d 314, 327–28 (5th Cir.2002) (en banc) (stating that "neither this court nor the Supreme Court has yet determined whether a citizen has a constitutional right to be free from state-created dangers"). As such, any state officer facing allegations that he violated a Plaintiff's Fourteenth Amendment right to freedom from state-created danger will be entitled to qualified immunity on those allegations because the officer could not have been given "fair warning that [his] alleged treatment of the Plaintiff was unconstitutional." *McClendon*, 305 F.3d at 329. In this case, Officer McCown was granted qualified immunity for precisely that reason. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 13.

Since Officer McCown was entitled to qualified immunity, the court finds that Plaintiff's state-created danger claim against Shelton, Hill and Brookshire Brothers also must fail. To hold otherwise would be to require civilian, gas-station employees to maintain more sophisticated understandings of unsettled constitutional principles than state agents, to whom those principles directly apply.

Under the other Fourteenth Amendment theory, state agents acquire a duty to protect individuals who are "involuntarily confined or otherwise restrained against [their] will pursuant to a governmental order or by the affirmative exercise of state power." *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995). This "special relationship" theory, however, is applied narrowly to individuals who have been incarcerated or otherwise taken into state custody. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (extending the duty of protection to involuntarily committed mental patients); *de Jesus Benavides v. Santos*, 883 F.2d 385, 388 (5th Cir.1989) (noting extension of the duty of protection to state prisoners); *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir.1990) (extending the duty of protection to children placed under state supervision); *DeShaney v. Winnebago County Dep't. of Social Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the "special relationship" is only created through "incarceration, institutionalization or other *similar* restraint") (emphasis added).

In the present case, Plaintiff was merely "seized" by Officer McCown, and not incarcerated, committed or placed in foster care. Thus, no "special relationship" existed between McCown and Plaintiff. See Op. and Order Grant'g. in Part and Den. in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 16.

dismissed. Defendants' motion for summary judgment is, therefore, GRANTED with respect to all of Plaintiff's Fourteenth Amendment claims.

## (2) The Fourth Amendment

Plaintiff has alleged that Defendant Shelton conspired with Officer McCown to deprive Plaintiff of his Fourth Amendment rights. The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. AMEND. IV.

 In order to state a claim under § 1983 for unreasonable seizure, Plaintiff must demonstrate that (1) he was seized within the meaning of the Fourth Amendment and (2) that such seizure was unreasonable. *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). A person has been " 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The "reasonableness" of any such seizure "must be judged from the perspective of a reasonable officer on the scene" based on whether the actions taken were " 'objectively reasonable' in light of the facts and circumstances confronting them." *Johnson,* 876 F.2d at 479.

 The court has already ruled that Plaintiff's deposition testimony contains evidence supporting the conclusion that Plaintiff was unreasonably seized by Officer McCown when he was allegedly detained and coerced into siphoning gasoline. Op. and Order Grant'g in Part and Den. in Part Defs.' Mot. for Summ. J. at 13–14. In order to overcome Defendant Shelton's motion for summary judgment, however, Plaintiff will bear an additional burden. It is well established that the Fourth Amendment does not apply to private conduct. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In fact, the Fourth Amendment is "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation of any government official.' " *Id.* (quoting *Walter v. United States,* 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (BLACKMUN, J., dissenting)). Because Shelton is not a state officer, agent or employee, Plaintiff must show that Shelton acted with the participation or knowledge of Officer McCown in the allegedly unreasonable seizure. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). If Plaintiff can show that Shelton acted as a "willful participant in a joint activity" [7] with Officer McCown, then Shel-

---

**7.** Previously, the court employed Texas law when reviewing Plaintiff's conspiracy claims. Op. & Ord. Grant'g in Part and Deny'g in Part Defs.' Mot. to Dismiss, or in the Alt., Mot. for a More Definite Statement at 11. Upon reconsideration, the court has determined that the continued use of Texas conspiracy law would be in error. Since this court's jurisdiction over Plaintiff's § 1983 claims arises under 28 U.S.C. § 1331, federal law should be employed to resolve Plaintiff's federal claims. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state"); *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (quoting *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 245, 63 S.Ct. 246, 87 L.Ed. 239 (1942), for the proposition that "[j]ust as federal courts are constitutionally obligated to apply state law to state claims, ... so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the par-

ton will have acted "under color of law," and the Fourth Amendment will be applicable to his conduct. *United States v. Price*, 383 U.S. 787, 794 & 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); 42 U.S.C. § 1983.

In their summary judgment motion, Defendants allege that "the only actions of Defendant Shelton were talking to the police and providing the implements for Plaintiff to suck out the gas." Defs.' Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J. at 6. Defendants claim that after Shelton

ties under controlling federal law [are] protected' ").

In Texas, to prove conspiracy, Plaintiff must satisfy a five prong test, demonstrating: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 172 (5th Cir.2000) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983)); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968) (quoting *Great Nat'l Life Ins. Co. v. Chapa, Tex.*, 377 S.W.2d 632, 635 (1964); *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550 (1937)). Additionally, "In Texas, 'civil conspiracy requires specific intent.' " *Peavy*, 221 F.3d at 173 (citing *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995)). "Proof that a defendant 'intend[ed] to engage in the conduct that resulted in the injury' is insufficient." *Id.* "Instead, '[f]or a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement.' " *Id.*

Federal law regarding conspiracy in the § 1983 context can be less demanding. In *Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir.1963), the Fifth Circuit said, conspiracy to violate § 1983 is asserted "on *more or less* traditional principles of agency, partnership joint venture and the like." In order to prevail on a § 1983 conspiracy claim, Plaintiff needs only to satisfy two elements: "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*,

spoke with Officer McCown, "Officer McCown gave all instructions." *Id.* at 6. Defendants claim that the foregoing allegations are supported by evidence in the record, and that Defendants are entitled to summary judgment because the evidence supplied by Plaintiff does not lead to the conclusion that a conspiracy existed between McCown and Shelton. *Id.* at 7.

■ Plaintiff must now "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Celotex*, 477 U.S. at 325, 106 S.Ct.

918 F.2d 1178, 1187 (5th Cir.1990). It is important to note, however, that "a conspiracy claim is not actionable without an actual violation of section 1983." *Id.* (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.1960), *cert. denied*, 366 U.S. 955, 81 S.Ct. 1905, 6 L.Ed.2d 1247 (1961)). Further, proving conspiracy in any formal sense is not essential to proving § 1983 liability. *See Nesmith*, 318 F.2d at 126. In fact, the usefulness of alleging conspiracy in the § 1983 context may be limited to circumstances wherein a plaintiff's rights are violated by a group of defendants involved in a scheme large and complicated enough to invoke significant questions regarding which Defendants are legally accountable for which actions. *See Nesmith*, 318 F.2d at 125–126 (emphasis added) (citing *Lewis v. Brautigam*, 227 F.2d 124, 128 (5th Cir.1955) for the proposition that conspiracy "may be pled as a mechanism to impose liability on ... the Defendants without regard to the person doing the particular act"); *Pfannstiel*, 918 at 1187; *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995). Additionally, any conspiratorial arrangement may be of some assistance in calculating damages. *Id.*

Otherwise, and specifically in cases like this one, the regular § 1983 framework is sufficient to impose liability on those who deserve it. Even absent an allegation of any formal conspiracy, Fourth Amendment claims may be asserted against civilian defendants who have acted as "willful participant[s] in [ ] a joint activit[ies]" with police officers. *United States v. Price*, 383 U.S. 787, 794 & 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); 42 U.S.C. § 1983.

2548, and *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In so doing, Plaintiff may not "rest upon ... mere allegations or denials of the adverse party's pleading...." *Id.* Additionally, because Plaintiff has plead a "conspiracy" claim, bald allegations that a conspiracy existed will be insufficient to overcome a motion for summary judgment. *Young v. Biggers,* 917 F.2d 873, 877 (5th Cir.1990). In the Fifth Circuit, "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based." *Lynch v. Cannatella,* 810 F.2d 1363, 1369–70 (5th Cir.1987). In order to survive Defendants' motion for summary judgment, therefore, Plaintiff must direct the court to evidence in the record demonstrating that Shelton willfully participated with McCown in the allegedly unreasonable seizure. *Price, supra.*

Plaintiff has presented the following evidence. For the purposes of this motion, the court regards the content of Plaintiff's deposition statements as true.

Prior to McCown's arrival, Plaintiff and Shelton were engaged in an argument about who would pay for the excess gas. Pl.'s Dep. at 50–51. In this argument, Plaintiff states he told Shelton, "Man, you get a hose and a bucket and you can get your damn gas out of my car." *Id.* at 50. At that point, Shelton instructed an attendant to bring out a bucket and hose, but told Plaintiff, "you are going to suck it." *Id.* When Plaintiff said, "I'm not sucking a damn thing," Shelton called Officer McCown. *Id.*

When McCown arrived on the scene, Shelton told McCown that "this man's trying to steal my gas." *Id.* Shelton then told McCown his version of the facts giving rise to the dispute. *Id.* Thereafter, Plaintiff testifies that Officer McCown "come up to me and said, 'if I was [Shelton], I wouldn't want the damn gas because its contaminat-

ed,' in my face pointing at me like I really did something." *Id.* Plaintiff tried to explain the situation to McCown, but every time Plaintiff offered a solution, McCown responded, "I ain't got time for this. What you going to do?" *Id.* at 52. After rebuffing Plaintiff's explanations, McCown asked Plaintiff, "Do you have money at home?" *Id.* Apparently, McCown was willing to drive Plaintiff to get money to pay his alleged debt to Shelton. *Id.* Plaintiff responded to McCown, "No, I don't have any money at home. That's why I'm trying to get to Houston."

After Plaintiff told McCown that he had no money at home, McCown continued "hollering" at Plaintiff, and finally said, "you are going to do one of three things: You are going to do, one, give that man his money; two, give that man his gas; or three, you're coming to go with me." *Id.* Plaintiff, now afraid of Officer McCown, said, "man, I'm not going nowhere with you," to which Officer McCown responded "well, too bad. Look like you get to suck some gas." *Id.* McCown then patted Plaintiff on his back, squeezed his shoulder and took Plaintiff to his automobile. *Id.*

At that point McCown forced Plaintiff to attempt to siphon the gasoline using implements that Shelton had supplied. *Id.* at 53. Those implements proving inadequate, McCown asked Shelton, "can you get that man some more hose?" *Id.* Shelton replied, "oh yeah, I got plenty of it," and he retrieved more hose. *Id.* Then McCown asked Shelton to get Plaintiff another bucket, which Shelton did. *Id.* at 54.

Next Shelton and McCown decided that the siphoned gasoline would be placed into the gas tank of Shelton's car, and Shelton thereafter backed his car up behind Plaintiff's truck. Id. at 54. Plaintiff testifies that "the whole time I'm sucking, they're pouring the gas. The manager—he's not doing nothing but just sitting around doing

his thing—the police officer pouring the gas in. And they just laughing and joking at my expense." *Id.*

Plaintiff's deposition testimony creates a genuine issue of material fact regarding whether Shelton "willfully participated in a joint activity" with Officer McCown in satisfaction of *Price*, and *Jacobsen*. Because Plaintiff's deposition presents evidence (1) that Plaintiff was seized by Officer McCown, (2) that the alleged seizure was unreasonable, and (3) that Defendant Shelton willfully participated with McCown in the unreasonable seizure, Plaintiff's Fourth Amendment claim is appropriate for trial. Defendants' Motion for summary judgment is hereby DENIED with respect to Plaintiff's Fourth Amendment claim against Defendant Shelton.

The court now turns to the question of Brookshire Brothers' liability. Defendants' argue that, even if Plaintiff succeeds in proving concert of action between McCown and Shelton, Plaintiff's Fourth Amendment claim against Brookshire Brothers ought to be dismissed because "[o]bviously there is no *respondeat superior* for § 1983 purposes." Defs.' Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J. at 8.(citing *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Where Defendants brush aside Plaintiff's claim in a single sentence, the court finds a more complicated issue. What *is* clear is that Defendants have cited the wrong precedent to support their statement of law. *Collins v. City of Harker Heights* stands for the proposition that a municipality (and not a private employer) generally "is not vicariously liable under § 1983 for the constitutional torts of its agents." 503 U.S. at 122, 112 S.Ct. 1061. Even the *Collins* rule, however, has exceptions. For example, *Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d

412 (1989), holds that a municipality can be held liable under § 1983 "for constitutional violations resulting from its failure to train municipal employees."

It is not so clear, however, that a private employer cannot be held vicariously liable under § 1983 when its employees act under color of law to deprive customers of constitutional rights. The court can find no case that supports this proposition, and the language of § 1983 does not lend itself to Defendants' reading. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Though the Supreme Court has stated that § 1983 "cannot be easily read to impose liability vicariously on *governing bodies* solely on the basis of the existence of an employer-employee relationship with a tortfeasor," *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis added), the Court has made no similar statement regarding *private employers*. Indeed, there would be no textual basis for such a statement.

Additionally, the court finds no persuasive policy justification for shielding private employers from vicarious liability. While the Supreme Court has found that Congress did not want to create a "federal law of *respondeat superior*" imposing liability in municipalities in the § 1983 context because of "all the constitutional prob-

lems associated with the obligation to keep the peace," *Monell,* 436 U.S. at 693, 98 S.Ct. 2018, this court cannot find any similar concerns implicated in the private context. Imposing liability on private corporations affects neither the state's police power nor its ability to regulate its municipalities. Instead, allowing the imposition of vicarious liability would seem to keep Congress within its broad power to regulate interstate commerce. Thus, no significant federalism issues are raised when private employers are held liable for the constitutional torts of their employees.

 For these reasons, the court holds that neither *Monell* nor its progeny can be read to shield private corporations from vicarious liability when their employees have committed a § 1983 violation while acting within the scope of their employment. If Plaintiff can demonstrate that Shelton committed a Fourth Amendment violation in the course of his employment, Brookshire Brothers may be held liable. Such a violation would be "within the scope of employment" if it were " 'actuated, at least in part, by a purpose to serve the [employer],' even if it is forbidden by the employer." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 755, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (quoting RESTATEMENT (SECOND) OF TORTS §§ 228(1)(c) & 230). The court infers that the scope of Shelton's responsibilities to Brookshire Brothers includes handling customer disputes and ensuring that customers pay for their gas; this may be reasonably inferred from Plaintiffs deposition testimony and Hill's statement that Plaintiff had to talk to her manager. Pl.'s Dep. at 48. Shelton's actions, as alleged by Plaintiff, allow the further inference that he was motivated at least in part by a desire to serve Brookshire Brothers. Though Shelton allegedly placed the siphoned gasoline into his own gas tank and collected no money for Brookshire Brothers, there is some evidence that Shelton

first tried to collect on the alleged debt and resolve the dispute in favor of his employer. Pl.'s Dep. at 49, 54. Thus Plaintiff has succeeded in demonstrating a genuine issue of material fact with regard to whether Shelton was acting within the scope of his employment. Defendants' motion for summary judgment is DENIED with respect to Brookshire Brothers on this claim.

## C. Intentional Infliction of Emotional Distress

Plaintiff alleges that the actions of Defendants Brookshire Brothers and Shelton were "extreme and outrageous and performed with the intention of causing severe physical and emotional distress to the Plaintiff." Pl.'s Second Am. Original Compl., ¶ 20. Plaintiff further alleges that he suffered "extreme indignities and humiliation, severe [e]motional distress, mental anguish, loss of liberty, loss of standing in the community," and Plaintiff states that he "has been held up to public ridicule before his peers." Pl.'s Second Am. Original Compl., ¶ 20.

 The Supreme Court has interpreted *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) such that federal district courts must apply state substantive law to pendent claims. *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Plaintiff's tort claims are before this court as pendent claims under 28 U.S.C. § 1367. Texas state law, therefore, applies.

 The State of Texas has adopted the tort of intentional infliction of emotional distress as it is stated in § 46(1) of the RESTATEMENT (SECOND) OF TORTS. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex. 1993). To recover for intentional infliction of emotional distress, Plaintiff must prove that: "(1) the defendant acted intentionally or recklessly; (2) the conduct was 'extreme

and outrageous'; (3) the defendants' actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *SW Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 54 (Tex. 1998); *Twyman,* 855 S.W.2d at 621; Restatement (Second) of Torts § 46(1). "According to the Restatement, liability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman,* 855 S.W.2d at 621 (*quoting* Restatement (Second) of Torts § 46(1)).

█ Assuming, arguendo, that Defendants' conduct was reckless and outrageous, the court can find no evidence in the record indicating that Plaintiff has actually suffered any emotional distress. In fact, the only evidence in the record on this subject is a statement in Plaintiff's deposition where Plaintiff admits that he never consulted a "psychologist, psychiatrist or any mental healthcare worker or counselor for any type of mental problems at all." Defs.' Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J., Exhibit 1, Pl.'s Dep. at 42.

Plaintiff did manage to *allege* that he was emotionally distressed by the siphoning experience. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 11 (stating that the reports from Plaintiff's alleged therapist "have not been completed but will certainly show that the Plaintiff has been severely emotionally harmed by the unlawful acts of Shelton and McCown"). Unfortunately for Plaintiff, however, mere unsupported allegations will not assist Plaintiff in defeating Defendants' motion for summary judgment. Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Lujan,* 497 U.S. at 885–86, 110 S.Ct. 3177. There is nothing in the excerpts from

Plaintiff's deposition testimony attached to his response to this motion for summary judgment that substantiates his allegation that he suffered emotional distress. Because Plaintiff has failed to provide evidence of facts giving rise to a genuine issue, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's intentional infliction of emotion distress claim.

### D. Assault and Battery

█ Under Texas law, "an assault is . . . an offense against the peace and dignity of the state, as well as an invasion of private rights." *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.App.-Galveston 1950, writ ref'd n.r.e.). Thus, "the definition of assault, whether in a criminal or civil trial, is the same." *Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 264 (Tex.Civ.App.-Corpus Christi, 1980). The Texas Penal Code definition of assault is found at § 22.01.

(a) A person commits an offense if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code, § 22.01. The Texas definition of battery is identical to the portion of the Texas definition of assault found at Tex. Penal Code, § 22.01(a)(3). *See Bailey v.C.S.,* 12 S.W.3d 159, 162 (Tex.App.-Dallas, 2000, no pet.) (stating "[a] person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably

believe the other person will regard the contact as offensive or provocative").

Based on the court's reading of the foregoing case and statutory law, § 22.01(a)(1) & (2) are unavailing to Plaintiff. First, Texas Penal Code § 22.01(a)(1) requires proof that the Defendant actually caused bodily injury to the Plaintiff. *Honeycutt v. State*, 82 S.W.3d 545, 548 (Tex.App.-San Antonio 2002, pet. ref'd). While Plaintiff has alleged that he was injured, Plaintiff has submitted no actual evidence of bodily injury. Pl.'s Dep. at 48–54. Section 22.01(a)(1), therefore, is inapplicable. Second, the court reads § 22.01(a)(2) to prohibit verbal threats, but only those which cause the Plaintiff to actually fear "imminent bodily injury." *Edwards v. State*, 57 S.W.3d 677, 679 (Tex.App.-Beaumont 2001, Pet. Ref'd). If no immediate danger is perceived by the Plaintiff, no assault by threat has occurred. *Id.* In the instant case, Plaintiff has provided no evidence from which to conclude that Plaintiff believed or feared Defendant Shelton, when Shelton said, "you are going to suck it." Pl.'s Dep. at 50. In fact, Plaintiff testifies that he defiantly responded to Shelton with "I'm not sucking a damn thing." *Id.* Nothing in Plaintiff's deposition indicates that Plaintiff was actually afraid that Shelton could or would in any immediate way force Plaintiff to suck gasoline. Thus, § 22.01(a)(2) is inapplicable.

 Plaintiff does, however, manage to support his claim under § 22.01(a)(3). Under § 22.01(a)(3), neither injury nor apprehension of injury are necessary to state a successful claim; yet a Defendant must, *inter alia*, cause an actual physical contact with a Plaintiff in order to be liable. *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex.App.-Houston 1999, pet. denied). In the present case, Defendants allege that Plaintiff cannot prove assault or battery because Shelton never touched Plaintiff. Defs. Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Mot. for Summ. J. at 12–13. Defendants' argument, however, overlooks the plain language of 22.01(a)(3). For Defendant to cause Plaintiff to be touched does not require that Defendant himself actually touch Plaintiff. While Plaintiff presents no evidence that Plaintiff was ever touched by Shelton, it's possible that Shelton caused the touching, first, by suggesting to Officer McCown that Plaintiff should siphon gasoline and, second, by providing implements to Officer McCown to enable him to force Plaintiff to siphon gasoline.

Two facts alleged by Plaintiff would enable a reasonable jury to conclude that Shelton made the initial suggestion to McCown that Plaintiff should siphon the gasoline. First, prior to McCown's arrival, Shelton told Plaintiff that Plaintiff would have to siphon gasoline. Pl.'s Dep. at 50–51. Second, only after McCown listened to Shelton's account of the facts, did McCown mention siphoning gas. *Id.*

 A reasonable jury could also conclude that Shelton facilitated the siphoning by eagerly supplying the implements requested by McCown. Pl.'s Dep. at 53–54. These facts, if proved, would indicate that Shelton not only intended to cause Plaintiff to siphon gasoline, but also took affirmative steps to effectuate that intent. Plaintiff's deposition testimony, therefore, creates an issue of material fact regarding whether Shelton caused Plaintiff to suffer an offensive physical touching.

Defendants' motion for summary judgment is therefore DENIED with respect to Plaintiff's assault and battery claim.

 The court now turns to Brookshire Brothers' liability. In Texas, "an employer may be vicariously liable for an intentional tort when the act, although not specifically authorized by the employer, is closely connected with the employee's au-

thorized duties, that is, if the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity." *G.T. Management, Inc. v. Gonzalez,* 106 S.W.3d 880, 884 (Tex.App.-Dallas 2003, no pet.) (citing *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 617–18 (Tex.1999)). Since neither party has made any allegation regarding personal animosity on the part of Shelton against Plaintiff, the only question is whether Shelton was acting within the scope of his employment. The court infers that, as a manager for Brookshire Brothers, Shelton's employment responsibilities include, amongst other things, handling customer complaints and ensuring that customers pay for gasoline. This much, at least, is evidenced by the fact that Hill called Shelton to resolve her dispute with Plaintiff. Though Shelton may have committed an intentional tort in the course of carrying out his responsibilities, such action does not automatically place Shelton outside the scope of his employment. *See Hooper v. Pitney Bowes, Inc.,* 895 S.W.2d 773, 777 (Tex.App.-Texarkana 1995, writ denied) (stating that Texas courts have interpreted "within the scope of employment" quite broadly). As such, Plaintiff has demonstrated a genuine dispute regarding whether Plaintiff was acting within the scope of his employment, and this issue is appropriate for trial. Defendants' summary judgment motion is therefore DENIED with respect to Brookshire Brothers on this claim.

**E. False Imprisonment**

 To prevail under a false imprisonment claim in Texas, Plaintiff must prove (1) willful detention, (2) without consent, and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985).

Defendants allege (1) that Shelton detained Plaintiff only until the arrival of Officer McCown, (2) that the detention "took no longer than necessary in time to investigate the ownership of the property," and (3) that Shelton was privileged to detain Plaintiff until the arrival of McCown. Defs.' Brookshire Brothers, Ltd., Dennis Shelton and Thaketcha Hill's Motion for Summary Judgment at 13–14. Such a privilege does exist. The Texas Civil Practice and Remedies Code § 124.001 states, "[a] person who reasonably believes that another has stolen or is attempting to steal property is privileged to detain that person in a reasonable manner and for a reasonable time to investigate ownership of the property." Tex. Civ. Prac. & Rem. Code Ann. § 124.001 (1997).

Plaintiff alleges, on the contrary, the privilege claimed by Shelton does not apply (1) because Shelton did not turn over the investigation to Officer McCown and (2) because Shelton, and not McCown, imprisoned Plaintiff for the three hours that Plaintiff remained at Brookshire Brothers. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 12–13.

 Plaintiff's allegation is unsupported by Plaintiff's evidence. As described above, Plaintiff's own deposition testimony indicates that, after McCown arrived on the scene, McCown conducted the investigation. Plaintiff has failed to offer any evidence that would allow the court or the fact finder to conclude to the contrary. Pl.'s Dep. at 48–54. Unfortunately again, Plaintiffs unsupported allegations do not satisfy Plaintiff's burden under Rule 56(e) of the Federal Rules of Civil Procedure. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Lujan,* 497 U.S. at 885–86, 110 S.Ct. 3177. Defendants' motion for summary judgment is therefore GRANTED with respect to Plaintiff's false imprisonment claim.

**VI. CONCLUSION**

Upon consideration of the briefing and applicable law, the court concludes that the

Plaintiff has created genuine issues of material fact with respect to his Fourth Amendment and Assault and Battery claims. Defendants' motion for summary judgment is therefore DENIED in part and GRANTED in part consistent with the above discussion.

It is so ORDERED.